# Exhibit B

SHEET 1

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION, CRIMINAL PART
ESSEX COUNTY
INDICTMENT NO. 03-05-1830
APP. DIV. NO.

| STATE OF NEW JERSEY, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | TRANSCRIPT |
| | ) | of |
| vs. | ) | JURY TRIAL |
| | ) | |
| NAEEM MILLER, | ) | |
| | ) | |
| Defendant. | ) | |

Place: Essex Co. Courthouse
       50 West Market St.
       Newark, N.J.  07102

Date:  March 22, 2005

BEFORE:

    HONORABLE THOMAS R. VENA, J.S.C. and JURY

TRANSCRIPT ORDERED BY:

    LOUIS G. GONNELLA, ESQ. (Office of the Public Defender,
    Appellate Section, 9th Floor, 31 Clinton St., Box 46003,
    Newark, N.J.  07101)

APPEARANCES:

    GREGORY DeMATTIA, ESQ., Assistant Prosecutor
    Attorney for the State

    JONATHAN D. GORDON, ESQ.
    Attorney for Defendant

Transcriber Catherine Weigel
ELITE TRANSCRIPTS, INC.
14 Boonton Avenue
Butler, New Jersey  07405
(973) 283-0196
Video Recorded
Operator, Kathy Fagan



## STATE OF NEW JERSEY v NAEEM MILLER -- March 22, 2005

SHEET 2

2

### I N D E X

|                                    | Page   |
| ---------------------------------- | ------ |
| MOTION IN LIMINE ARGUMENT          |        |
| BY:  MR. GORDON                    | 4,11   |
| BY:  MR. DeMATTIA                  | 7,14   |
| DECISION                           | 14     |
| MOMTION TO SUPPRESS EVIDENCE ARGUMENT |     |
| BY:  MR. GORDON                    | 19     |
| BY:  MR. DeMATTIA                  | 23     |
| DECISION                           | 27     |
| JURY INSTRUCTIONS                  | 32     |

Colloquy

3

1  THE COURT:  Would somebody ask Victoria if
2  she wants to come out and join us?  All right.  This is
3  STATE VS. NAEEM MILLER, Indictment 03-05-1830.  Is that
4  the right number?  Yes.  Okay.  Appearances.
5  MR. DeMATTIA:  Gregory DeMattia, Assistant
6  Prosecutor, for the State.
7  MR. GORDON:  Jonathan Gordon on behalf of Mr.
8  Miller, who is present in the court.  Good morning,
9  Your Honor.  If I may respectfully request at this time
10  if Mr. Miller's handcuffs could be moved to the front.
11  THE COURT:  Wait until both officers are here
12  and then let me hear what they have to say about that.
13  MR. GORDON:  Thank you, Your Honor.
14  THE COURT:  In the meantime?
15  COURT OFFICER:  She's on her way, Judge.
16  THE COURT:  Okay.  Mr. Gordon has requested,
17  Officer, that Mr. Miller be cuffed on the front.  I
18  have no objection as long as you don't.
19  COURT OFFICER:  Well, the procedure, Judge,
20  is behind.  That's the way they want us to do it.
21  THE COURT:  All right.  And we'll -- we'll --
22  I have to concede security-wise to their -- to their
23  direction.  Once we get to the point of -- of testimony
24  then even if it's in a -- even if it's outside the
25  presence of the jury I'll ask him to be cuffed in the

## STATE OF NEW JERSEY v NAEEM MILLER -- March 22, 2005

SHEET 3

Colloquy / Argument - Gordon                    4

1  front so that he can take notes or do things of that
2  sort.
3              MR. GORDON:  Thank you, Your Honor.
4              THE COURT:  But at this point it's -- I don't
5  find that the necessity outweighs the instructions that
6  the officers have been given with regard to security.
7  Okay?
8              MR. GORDON:  Thank you, Your Honor.
9              THE COURT:  We're here outside the presence
10 of the jury on two motions prior to selection of the
11 jury, both of them filed by the defendant.  One is a
12 motion to suppress identification evidence, in essence
13 a request for a WADE hearing, the other being a motion
14 in limine to bar alleged flight evidence.
15             I've read the papers and, Mr. Gordon, if
16 there's anything that you want to highlight or -- or
17 something in addition that you want to bring to my
18 attention now is the opportunity.
19             MR. GORDON:  Thank you, Your Honor.  Your
20 Honor, I'm going to substantially rely on the papers
21 and just very briefly highlight just a couple of
22 points, if I may?
23             THE COURT:  Sure.
24             MR. GORDON:  Your Honor, I think STATE VS.
25 MANN is instructive here, 132 New Jersey 410.  That's a

Argument - Gordon                    5

1  1993 New Jersey Supreme Court case.  While in that case
2  the defendant attempted suicide, I believe if The Court
3  has read that case you'll see that our Supreme Court
4  dealt with that issue in the context of the rationale
5  surrounding the potential admission of flight evidence
6  because it was evidence subsequent to the crime, which
7  may have been probative on the issue of guilt.
8              I think STATE VS. MANN strongly indicates
9  that a hearing might be necessary in connection with a
10 flight issue because the court has to be strong in its
11 belief after hearing the evidence that, in fact, the
12 probative value of the flight evidence would outweigh
13 the prejudicial effect.  I just want to say, Your
14 Honor, that I think that anything related to where
15 Naeem Miller was arrested, and the date of the arrest,
16 and all of that relating to what I'll call the
17 Scranton, Pennsylvania circumstances.  I know The Court
18 is familiar with that based upon some discussions
19 counsel have had with The Court in chambers just
20 outlining the facts alleged by the State and the
21 position of the defense on that issue.  The Scranton,
22 Pennsylvania factor I think would clearly be
23 prejudicial to this defendant.  And, frankly, I don't
24 see how the State could show Your Honor that it has a
25 need for this evidence that would outweigh that

## STATE OF NEW JERSEY v NAEEM MILLER -- March 22, 2005

SHEET 4

Argument - Gordon                                  6

1  potential evidence because, as we know, this case is an
2  alleged identification case -- what we'll call an I.D.
3  case.  If the I.D. witnesses that are anticipated come
4  to court and they identify this defendant, then the
5  State will have what seems to be a level of proof that
6  may be persuasive to the jury, and they don't need the
7  speculation of the issues of Scranton, Pennsylvania.
8           As Your Honor knows, there's also an issue
9  about Cleveland, Ohio.  When Naeem was arrested in
10  Pennsylvania there became an issue about whether or not
11  there was some type of warrant for conduct allegedly
12  committed in the State of Ohio.  And so all of that, if
13  it does come in, Judge, is going to be very speculative
14  and ineffective.  It may even have to push Naeem to
15  have to testify to explain it, and so I think when The
16  Court balances everything I'm just respectfully
17  requesting that we speak to the officers, or we hear
18  from the officers in a hearing to determine exactly
19  what they did and how they did it, such that we could
20  say with the proper level of proof that The Court would
21  be satisfied that he knew there was some kind of
22  investigation going on where he was wanted for
23  questioning or wanted on a warrant for murder.  And so,
24  therefore, we could determine that it's reasonable to
25  say that there's a connecting of the dots between the

Argument - Gordon / DeMattia                       7

1  events of law enforcement and Naeem Miller in the weeks
2  and months after the shooting, all the way up to more
3  than two years later when he's arrested in
4  Pennsylvania.
5           THE COURT:  Thank you, Mr. Gordon.  Mr.
6  DeMattia?
7           MR. DeMATTIA:  Thank you, Your Honor.  I know
8  that we have had discussions to attempt to narrow the
9  issue to make things move a little bit smoother and I
10  appreciate that.  However, I briefly believe someone
11  has to put something on the record with regard to sort
12  of a little bit of a time frame here.
13           The State alleges this incident of homicide
14  occurred on 12-16-2001 outside of Toby's Lounge, 966
15  Bergen Street, City of Newark.  The State alleges at
16  that time that the defendant in court, Naeem Miller,
17  was responsible for the killing and wounding of another
18  individual, killing of a Mr. Timothy Phillips and the
19  wounding of a Mr. Stacy Davis, and from that point he
20  fled the scene.
21           Once the officers started to investigate the
22  case and starting to narrow their focus, there was a
23  time when Mr. Davis, I believe, was the first one to
24  actually make an identification with regard to the
25  perpetrator, that being December 21st, 2001.  December

## STATE OF NEW JERSEY v NAEEM MILLER -- March 22, 2005

SHEET 5

```
                         Argument - DeMattia                    8
 1    --  In January -- January 18th of 2002 -- finally Judge
 2    Fullilove was approached and we provided probable cause
 3    and he signed an arrest warrant for Naeem Miller for
 4    the acts of December 16th, 2001.  Based upon that
 5    warrant both Investigator Ben Powell, I guess who I
 6    should establish at this point was unfortunately killed
 7    in a motorcycle accident in August of last year and
 8    obviously will not be a witness --  However, his
 9    counterpart December Murad Muhammad and other
10    detectives from Newark Police Department indicated in
11    writing on at least two occasions going with this
12    warrant and with another wanted poster, which Your
13    Honor can view if so desired, to the last known address
14    of Naeem Miller, speaking to both a brother and a
15    father of Naeem Miller, indicating that they have an
16    active warrant for him.  They did say approximately,
17    not an exact time frame, approximately two months
18    before, because of behavioral problems or whatever, he
19    was put out of the house, but they indicated that if
20    they saw him they would relay the information to him.
21              Posters were left at the location.  Posters
22    were placed in the neighborhood for Naeem Miller, the
23    arrest of Naeem Miller.  There's one other documented
24    case of Murad Muhammad and another detective going back
25    to the location, leaving their cards again, not
```

```
                         Argument - DeMattia                    9
 1    speaking to anyone, but canvassing the area one more
 2    time.
 3              From that point on, in December of 2001 to
 4    January of 2002 both Detective Powell and Murad
 5    Muhammad conduct their investigation.  They have other
 6    cases, of course, they work on, but they always have an
 7    open warrant to deal with.  Phone calls are made to
 8    various states because of information received, such as
 9    North Carolina, Cleveland, and then ultimately we're
10    brought to Scranton, Pennsylvania.  The reason why
11    these phone calls were made, contact with the local
12    authorities were made, was obvious.  If they had made
13    contact with Naeem Miller they would have arrested him.
14    But for him being on the run they had to try to track
15    him down until ultimately we come to the Scranton,
16    Pennsylvania incident where he's out on the street with
17    another individual apparently acting in a disorderly
18    and drunken manner.  Police approach him in an attempt
19    to quiet him down and the other individual.  There is
20    some type of continued disorderly conduct.  He takes
21    off running.  He eventually is apprehended and to the
22    arresting officer he had given the name -- I forget
23    what name -- Mr. Wheeler, and he's brought down to the
24    booking officer in Scranton, Pennsylvania, and he gives
25    the name of I think it was Steven Cruz, until finally,
```

**STATE OF NEW JERSEY v NAEEM MILLER -- March 22, 2005**

SHEET 6

Argument - DeMattia                                                10

1  because the procedure is to book them, you fingerprint
2  them and fingerprints don't tell a lie, he indicates
3  that, well, my name is Naeem Miller and, of course,
4  there's a hit because there has been a nation-wide
5  warrant put out for this individual -- he's wanted for
6  murder.
7          The fact that Mr. Gordon indicates, well, Mr.
8  Naeem Miller might be forced to get up and testify to
9  explain maybe he was vacationing in Cleveland, maybe he
10 was vacationing in Scranton, doing some skiing or
11 whatever, that's his choice, but it doesn't impact your
12 decision as to whether that is indeed flight
13 information.  As a matter of fact, I'm entitled to tie
14 up all loose ends in front of a jury to say how he was
15 actually apprehended.  So to say that that's totally
16 immaterial I think is -- is -- is rather a weak
17 argument at this particular time because it's part of
18 the investigation.  He was arrested on the warrant.
19         Now, Your Honor, I say this.  None of the
20 fact of his disorderly conduct, his drunken behavior,
21 the chase, may indeed be too prejudicial to come out in
22 the context of this homicide trial.  But with the
23 proper sanitization that the case law talks about with
24 regard to testimony, I believe that it can come out
25 that these officers did come into contact with Naeem .

Argument - DeMattia / Gordon                                      11

1  Miller.  However, he did not choose to give his proper
2  name on two occasions, and then once his true identity
3  was discovered he was arrested on the outstanding
4  homicide warrant.  Now that all goes to flight and
5  consciousness of guilt, and I say that it is relevant
6  for those two reasons:
7          THE COURT:  Thank you, Mr. DeMattia.  Any
8  reply, Mr. Gordon?
9          MR. GORDON:  Briefly, Your Honor.  Just I
10 know Mr. DeMattia did not address the prejudice
11 argument except to say, well, we won't bring in
12 information about was he drunk in public in
13 Pennsylvania, but we will bring in the fact that he
14 gave an alias to the police.  You know, Your Honor,
15 that's not the whole story.  As I indicated in chambers
16 yesterday what the State's discovery shows the Scranton
17 discovery, as I'll call it, indicates that while he did
18 give two different names at that time, and he and his
19 co-defendants did run away from the police, he did give
20 the police the correct address where he was living, and
21 the police simply went to that address later on that
22 day or that night, or very shortly thereafter, and
23 there he was lying on the bed.  When he was brought to
24 police headquarters it's indicated he gave the name
25 Steven Cruz, but then almost immediately apparently

## STATE OF NEW JERSEY v NAEEM MILLER -- March 22, 2005

SHEET 7

Argument - Gordon                                    12

1  gave his true name and date of birth.  There's no
2  indication that he had been fingerprinted at that time
3  or whether we even knew he was to be fingerprinted at
4  that time.  I don't think the State is entitled in a
5  blanket statement just to tie up all loose ends in a
6  case.  I don't think the jury necessarily needs to know
7  where Mr. Miller was arrested.  In fact, they know Mr.
8  Miller has been brought before the court, the jury will
9  be told there's an indictment in this case, and while
10 it's not evidence of guilt, it brings the defendant
11 with notice of the charges before the court and jury.
12 They're going to know that he's here.  If the
13 identification witnesses identify him and the State
14 puts its proofs on as to identification, Mr. Miller is
15 here to pleading not guilty as to the charge, so that's
16 what happens in a criminal case.  The State doesn't
17 just get to tie up all loose ends.
18          If there's prejudice, Your Honor, and what
19 I'm saying is the idea that Mr. Miller is now arrested
20 two-and-a-half years later in Pennsylvania, well, then
21 anybody who is ever arrested after allegedly committing
22 a crime in another state could be deemed to have
23 committed flight with consciousness of guilt.  We know
24 that if the defendant is allegedly the perpetrator,
25 then if they've left theoretically then anybody could

Argument - Gordon                                    13

1  be charged or considered to have flown the coop with
2  consciousness of guilt.  And so what I'm saying here,
3  Your Honor, is there's simply not enough evidence to
4  connect the dots to say that there's no prejudice to
5  Mr. Miller.  We also know that there was a warrant for
6  him from Ohio, and so now what happens?  Does Mr.
7  Miller have to say no, I wasn't running from anything
8  in Newark because I didn't do anything in Newark, but I
9  knew there was a warrant for me in Ohio for murder.  I
10 don't understand how the State can't understand that
11 that potentially prejudices him, and he may have to
12 start explaining that.  And so just because he -- he
13 may have to start explaining that that doesn't mean,
14 well, that's his risk and we don't care.  The State is
15 seeking justice in this case, Judge, not just a
16 conviction.  Certain evidence should come out if it's
17 proper, it's probative and relevant.  In this case I'm
18 suggesting to you that the prejudice to Mr. Miller of
19 having to explain the fact, well, there was also a
20 warrant for me in Ohio and all those possibilities of
21 what might now happen dramatically overrides the need
22 of the State to bring in this evidence or tie up loose
23 ends, and if the defendant is prejudiced in this
24 criminal case then I submit to Your Honor that that
25 would not be fair.

**STATE OF NEW JERSEY v NAEEM MILLER -- March 22, 2005**

Argument - DeMattia / Decision                                    14

1    THE COURT:  Thank you, Mr. Gordon.  Is there
2   something pressing?
3    MR. DeMATTIA:  Yes, I -- I disagree with --
4    THE COURT:  Otherwise we -- I figured you
5   did.
6    MR. DeMATTIA:  Yes, with the amount of
7   prejudice that he's stating, particularly it's
8   irrelevant whether he has to think, well, am I wanted
9   for the one in Cleveland or the one in New Jersey?
10  That has no bearing.  It's his actions that one can
11  make reasonable inferences from in the weighing
12  process.
13   THE COURT:  All right.  STATE VS. MANN, 132
14  N.J. 410 is what provides us with a direction here.
15  The issue is whether or not the jury could reasonably
16  believe, or reasonably could infer, based upon the
17  evidence as has been described that -- that -- that the
18  -- the defendant attempted to flee or did, in fact,
19  flee from -- from an attempt to secure his -- attempt
20  to arrest him for the crime in the State of New Jersey.
21   Whether or not the evidence shows that is
22  going to depend upon the testimony that we hear during
23  the course of the trial.  The jury is entitled to make
24  a determination as to whether or not that evidence is
25  sufficient to enable them to find that the evidence --

Decision                                    15

1   the acts of Mr. Miller as described, if found to be
2   credible, that is, a credible description of what --
3   what he did or didn't do, or what he knew or didn't
4   know, the jury is entitled to find, and infer from that
5   evidence, consciousness of guilt, and the jury will be
6   appropriately instructed should that evidence be
7   forthcoming.
8    It's impossible to know beforehand whether or
9   not that's the -- that's the evidence that we're going
10  to hear.  I don't think it's necessary for us to
11  conduct a hearing in order to determine whether that --
12  that's going to be the case, because the hearing is
13  really to determine whether or not the testimony is
14  credible.  Assuming, based upon Mr. DeMattia's proffer,
15  the evidence will show -- or the evidence will be what
16  he is suggesting it is -- clearly it's probative.  I
17  don't think anybody disagrees that it's -- that it's
18  probative.
19   Mr. DeMattia is correct when he indicates
20  that almost in any trial there is a need on the part of
21  the State to show not only that -- that the defendant
22  beyond a reasonable doubt acted in a way that it's
23  suggested that by the indictment that he acted, it's
24  also necessary for the State to show beyond a
25  reasonable doubt that the -- that the acts of law

**STATE OF NEW JERSEY v NAEEM MILLER -- March 22, 2005**

SHEET 9

|   | Decision                                                16 |
|---|---|
| 1 | enforcement authorities were such as to lend credence |
| 2 | to its evidence as to the elements -- or the acts that |
| 3 | constitute the elements of the offense charged. |
| 4 | It is a significant road to hoe, a huge |
| 5 | burden that is very difficult to overcome, and absent |
| 6 | undue prejudice, the State is entitled to the |
| 7 | introduction of evidence, admissible evidence, |
| 8 | probative evidence, that -- that it believes will |
| 9 | assist it in showing beyond a reasonable doubt that the |
| 10 | defendant acted in the manner in which it is alleged. |
| 11 | Clearly the proffered evidence, if found to |
| 12 | be credible within the meaning of the law, would be |
| 13 | probative on the issue of consciousness of guilt. |
| 14 | Consciousness of guilt, of course, goes a long way to |
| 15 | proof beyond a reasonable doubt that the acts occurred. |
| 16 | The law recognizes that one is not conscious of guilt |
| 17 | and acts in such a way that -- that a guilty person |
| 18 | acts when one is not guilty.  And evidence of that is |
| 19 | -- is admissible. |
| 20 | Now, STATE VS. MANN instructs us, though, |
| 21 | that there are exceptions to -- to what it is that I |
| 22 | just said.  I mean, exception is not any prejudice. |
| 23 | Any evidence that goes to the defendant's guilt is |
| 24 | prejudicial, so virtually any -- anything offered by |
| 25 | the State is going to be prejudicial, if you define as |

|   | Decision                                                17 |
|---|---|
| 1 | prejudicial that information provided, or the evidence |
| 2 | provided, goes towards whether or not the defendant |
| 3 | committed the crime that he's charged with.  So the |
| 4 | question is not prejudice.  It's undue prejudice and |
| 5 | whether or not the prejudice outweighs the probative |
| 6 | value.  In other words, whether or not it would enable |
| 7 | the jury for some improper reason to find the defendant |
| 8 | guilty as opposed to actual evidence of guilt. |
| 9 | So here there is no undue prejudice, none, in |
| 10 | fact, that I can even see that -- that's -- that is |
| 11 | suggested.  The prejudice that is suggested is, well, |
| 12 | if the jury gets to hear this they may actually use |
| 13 | this evidence to find the defendant guilty.  Well, |
| 14 | that's why it's being offered by the State and, |
| 15 | therefore, is perfectly and entirely proper. |
| 16 | Now, the sanitation suggested by Mr. DeMattia |
| 17 | is -- is, I think, appropriate at least as to the fact |
| 18 | that Mr. Miller was wanted for a homicide in Ohio, and |
| 19 | I instruct Mr. DeMattia to instruct his witnesses that |
| 20 | this proceeding -- that questions he asks must be |
| 21 | tailored and, in fact, some -- some leading questions |
| 22 | will be permitted in order to avoid any accidental or |
| 23 | deliberate attempt to tell this jury that Mr. Miller is |
| 24 | wanted for -- or was wanted at that time -- for -- for |
| 25 | a homicide in Cleveland. |

**STATE OF NEW JERSEY v NAEEM MILLER -- March 22, 2005**

SHEET 10

Decision                                        18

```
 1        Now, if Mr. Gordon tactically determines that
 2   that's appropriate information at the time to -- to
 3   convey to the jury, well, that's on him.  It's not --
 4   It would be not beyond the scope of appropriate cross-
 5   examination if he wanted to attempt to rebut the
 6   consciousness of guilt issue by suggesting that the
 7   defendant fled not because he was wanted for murder in
 8   New Jersey but because he was wanted for murder in
 9   Ohio, it's not as bizarre as that might sound.
10   Nevertheless, that opens the whole new scope of the
11   inquiry that -- that in my view is best left alone.
12   But that's not for me to determine at this point.  But
13   until the defendant opens that door it must remain
14   shut.
15        So I find that the -- the proposed evidence
16   of flight is wholly admissible with the caveat under
17   STATE VS. MANN that I just mentioned.
18        Now, Mr. Gordon, you have also asked for in
19   effect a WADE hearing.  You understand it is your
20   obligation to before there is to be a WADE hearing to
21   convince The Court that there is -- that there is some
22   evidence of the fact that there was some taint, some
23   improper process in the course of the identification.
24   I'm looking for the word and it's escaping me at the
25   moment.
```

Colloquy / Argument - Gordon                    19

```
 1        MR. DeMATTIA:  Suggestiveness, Your Honor?
 2        THE COURT:  Suggestiveness -- improper
 3   suggestiveness that occurred in the -- in the
 4   proceeding -- the identification proceeding that you
 5   suggest.  Now, my understanding from reading your
 6   papers and from discussions we've had with regard to
 7   the -- the -- the proposed WADE hearing is not so much
 8   that you're suggesting in and of itself that the events
 9   that resulted in the identification that Mr. DeMattia
10   is proffering contains some taint or evidence of
11   suggestiveness in and of itself, but that there was
12   some other identification proceeding that may have lent
13   a suggestiveness to the -- to the identification
14   proceeding that Mr. DeMattia is attempting to
15   introduce.  Did I state that correctly?
16        MR. GORDON:  You did, Your Honor.
17        THE COURT:  Okay.  Anything else you want to
18   add to that?
19        MR. GORDON:  Your Honor, the -- there were,
20   in effect, two separate attempts, I believe, to have
21   Mr. Davis identify a photograph of the shooter in this
22   case.  But even before that there was evidence that Mr.
23   Davis had been asked by Newark police if he had any
24   knowledge of who shot him and if he could provide a
25   description.  He indicated to the Detective DeFabio
```

## STATE OF NEW JERSEY v NAEEM MILLER -- March 22, 2005

SHEET 11

Argument - Gordon                                      20

1   that he had no knowledge of who shot him and could not
2   identify anyone.  Despite that -- and that was on
3   December 16th of 2001 -- on December 18th of 2001 they
4   went to the hospital, detectives -- Investigator Powell
5   and Detective Muhammad went to University Hospital to
6   interview Davis, and what they did --
7           THE COURT:  Well, let me interrupt for a
8   second.  You're not suggesting because he initially
9   said he couldn't identify anybody that it was somehow
10  improper for them to attempt to secure an
11  identification.
12          MR. GORDON:  No, Your Honor, I'm not saying
13  it was improper for them to attempt to do that.
14          THE COURT:  Okay.
15          MR. GORDON:  I'm simply putting that into the
16  equation, the timeline of events --
17          THE COURT:  I understand.
18          MR. GORDON:  -- and, Your Honor, it's also
19  clear from the discovery provided by the State that the
20  day after the shooting, after Mr. Davis said he
21  couldn't identify anyone, they canvassed the area of
22  the shooting again and indicated that street talk
23  indicated that Naeem Miller was the shooter.  However,
24  there's nothing in the reports at all, which I think
25  raises a question immediately as to why any of these

Argument - Gordon                                      21

1   people who gave such important information were never
2   identified, no contact information was noted in the
3   report.  There was no indication whatsoever of the
4   source of knowledge of any of these people, if it was
5   eyewitness accounts or if it was just mere street
6   hearsay.  Based on that they obtained a photo, went to
7   the hospital the next day to see Mr. Davis, who was
8   recovering from surgery for the gunshot wound to the
9   leg.  They did not ask him if he was under the
10  influence of any medication at that time, or anything
11  that might impair his judgment.  I think it's
12  reasonable to -- to believe that Mr. Davis may have
13  been under some pain medication, it being the day after
14  his surgery.  Apparently six photos were shown to Mr.
15  Davis, one of them being of the defendant, in
16  sequential order.  However, for some reason, again
17  inexplicably, there's no notation of anything related
18  to any of these photographs, who they were, any
19  identifying numbers whatsoever, as to what photos were
20  shown to Mr. Davis.  So we don't know, quite frankly,
21  Your Honor, what level of suggestiveness there was in
22  that initial encounter because the State can't provide
23  the defense or The Court with any photo array or any
24  photos that would be in the sequential photo
25  identification process.

## STATE OF NEW JERSEY v NAEEM MILLER -- March 22, 2005

Argument - Gordon                                    22

1   We know that three days later they went back
2   to him again and showed him six photos again.  But on
3   that occasion they did what we would have expected them
4   to do the first time, which was provide Mr. Davis with
5   a photo display instruction form, have him read it,
6   understand it and execute it, and then they showed him
7   photographs which we can identify and which we can all
8   see to determine if, in fact, the photo identification
9   process was fair and reasonable.  We can't do that with
10  the first one, and so that in and of itself I think
11  requires a hearing so The Court can determine if the
12  photo -- the photos that were shown the first day,
13  December 18th, are the same photos that were shown on
14  December 21st, because then The Court at least would
15  have some level of satisfaction that there were no
16  Constitutional violations, that there was no
17  suggestiveness or problem with the photos that were
18  shown, or any information that was given to Mr. Davis
19  at the time as to the fact that they've gotten Mr.
20  Miller's photo based upon people around the area saying
21  that Naeem Miller was the shooter.  All of this, I
22  think, in fairness to the defendant would need to be
23  fleshed out at a hearing.  It's difficult for me to say
24  that The Court can be convinced now, or that I can even
25  show the proof that there was impermissible

Argument - Gordon / DeMattia                         23

1   suggestiveness.  I can only show that there appears to
2   be a strong possibility, if not probability, of a taint
3   there, and I could be wrong, but how can The Court be
4   satisfied that the second identification wasn't tainted
5   by the first one if we don't know what photos were
6   shown, and I think at a minimum a short hearing would
7   at least satisfy The Court that the photos that were
8   shown did not create a taint.  That's the problem that
9   we have here because it's inexplicable to me that none
10  of this information would be noted in the report when
11  what occurred three days later was noted and was
12  followed with a procedure that we would have expected
13  on the second day.  So that's the basis for my concern,
14  Your Honor.
15          THE COURT:  And I could speculate as to a --
16  a not-improper reason, albeit it perhaps in error, why
17  -- why such information doesn't exist or wasn't
18  preserved, but that would be just speculation, wouldn't
19  it, Mr. DeMattia?
20          MR. DeMATTIA:  With regard to what aspect?
21          THE COURT:  The -- the fact that Mr. Gordon
22  suggests that the discovery reveals that the initial
23  attempt at an identification procedure, a failed
24  attempt because of the -- perhaps the condition of or
25  the emotional state of -- of the witness, there's no,

**STATE OF NEW JERSEY v NAEEM MILLER -- March 22, 2005**

Argument - DeMattia                                    24

1   other than what appears in the naked report, there's no
2   evidence as to what -- you know, how do I know that
3   they didn't show them because they had gotten Naeem
4   Miller's name from the street that they didn't show
5   him, you know, they were on the fourth picture and the
6   first three pictures were of, you know, 90-year-old
7   white men with white hair and beards.  How do I know
8   that that isn't what happened.  Because you didn't
9   provide him with the pictures I don't know if they
10  exist, whether they were discarded, and I haven't heard
11  anybody tell me under oath that there weren't three
12  white men with white beards that preceded the picture
13  of -- of Mr. Miller. So how do I know that without
14  having a hearing?
15          MR. DeMATTIA:  The only thing I could say to
16  that argument is the following.  Through my interview -
17  - and he was free to examine the witnesses pre-trial,
18  which that right is always there, I, too, found out
19  from Detective Murad Muhammad that I at that point based
20  on the condition of the victim there was no further
21  identification attempted, and they retreated and
22  figured they would go back again on another occasion.
23  The same photographs were used on the second occasion,
24  Your Honor, through an interview.
25          THE COURT:  I only know that because you're

Argument - DeMattia                                    25

1   telling me.
2           MR. DeMATTIA:  Exactly, Your Honor, exactly,
3   so --
4           THE COURT:  And -- and additionally I wonder,
5   as does Mr. Gordon, why -- now, I'm not suggesting.
6   Maybe Mr. Gordon does, but I'm not suggesting that
7   there is any specific requirement that one use photo
8   identification forms to provide the witness certain
9   information and instructions and all that.  In the
10  actual identification procedure that you're going to
11  introduce presumably you're going to provide all that
12  information to The Court and to the jury.
13          Mr. Gordon says that at least as far as he
14  knows that information doesn't exist as to the prior
15  one.  Well, perhaps that's because they decided that
16  they were going to abandon the entire --  I don't know.
17  How do I know without hearing from them?
18          MR. DeMATTIA:  Well, Your Honor, I would
19  suggest that we bring up Detective Murad Muhammad to
20  briefly put him on the stand.  However, Your Honor, one
21  -- one point with regard to the time frame of this
22  incident.  It's 2002.  I have no idea, nor am I
23  interested, in what was a guideline.  First of all,
24  guidelines are guidelines.  I would assume they have no
25  business in the courtroom, because then if guidelines

## STATE OF NEW JERSEY v NAEEM MILLER -- March 22, 2005

SHEET 14

Argument - DeMattia                                          26

```
 1   had been followed then, of course, Your Honor would say
 2   no need for any type of WADE hearing that could direct
 3   the jury to say that guidelines were followed so ipso
 4   facto there's no prejudice, it's a perfect photo
 5   display.  So guidelines really have no bearing, and I
 6   would obviously object to whether there was a
 7   guideline, because they're guidelines.  They have no
 8   basis in law, and to ignore a guideline or not ignore a
 9   guideline, at what particular time they were enforced,
10   the transition period, especially in this case of 2001
11   into 2001, I have no idea, I have no concern frankly as
12   to whether it was in effect the suggestive way of doing
13   it.  So --
14             THE COURT:  Well, the purpose of a guideline
15   is -- is just that, to guide, and the reason why the
16   officers are guided in that manner is to ensure that
17   there was no improper suggestiveness.  The issue for me
18   to determine is whether there was improper
19   suggestiveness.  If they followed guidelines and the
20   guidelines were such as to suggest that there was no
21   improper suggestiveness then that would be appropriate
22   information to provide.  The fact that there are
23   guidelines and they may not have followed them is not
24   evidence of the fact that there was improper
25   suggestiveness.  Evidence of improper suggestiveness I
```

Argument - DeMattia / Decision                              27

```
 1   will certainly hear if that's what's offered.
 2             MR. DeMATTIA:  But I think to expedite
 3   matters, Your Honor, Detective Muhammad is downstairs.
 4             THE COURT:  Yes.
 5             MR. DeMATTIA:  Would you like me to --
 6             THE COURT:  No, especially with something --
 7   I don't know -- we have 70, 90 or something jurors and
 8   it's now 5 to 10.  We'll certainly hear from Detective
 9   Muhammad, I think.  So you're not disagreeing that we
10   need to have some kind of a hearing -- some kind of a
11   WADE hearing at this point?
12             MR. DeMATTIA:  Abundance of caution, Your
13   Honor.
14             THE COURT:  Yes.  So we're going to have one
15   and we're going to have one before -- before the jury
16   is sworn.  But I don't want to do it now because I
17   don't want to leave the jury sitting in the hall.
18   Okay?
19             MR. DeMATTIA:  I do have one question, also.
20   I apologize.  I'll make it quick.  With regard to
21   clarification for the direction of the prosecutor here,
22   it was never my intent to never mention it because of
23   the obvious impact, a possible mistrial, that Mr. Naeem
24   had a murder warrant, indictment, or whatever it was,
25   out in Cleveland, Ohio.
```

## STATE OF NEW JERSEY v NAEEM MILLER -- March 22, 2005

SHEET 15

```
                          Colloquy                       28
 1        THE COURT:  Good.
 2        MR. DeMATTIA:  No, no.  But, Your Honor, I do
 3   intend to ask my detective what efforts were made to
 4   locate --  It happened December 16th, 2001, and what
 5   did you do up and until he was found, you know, both
 6   him and Detective Powell based on information received?
 7   Not unusual.  Did contact authorities in several states
 8   because he could not be found, and I intend to go into
 9   that with him, not we contacted Cleveland because he
10   had a murder warrant in Cleveland, no, no.  But they
11   made efforts to locate him in a couple of different
12   states.
13        MR. GORDON:  Judge, if I may?
14        THE COURT:  Without repeating something you
15   certainly said?
16        MR. GORDON:  Certainly.  Thank you.  While I
17   understand about the testimony of what they did in
18   Newark in the month of January or early February of 2--
19   2, there is absolutely nothing in the discovery that
20   any efforts that were made, any phone calls that were
21   made.  There's a discussion in a -- in a wanted
22   teletype or something that the suspect may have fled to
23   North Carolina, but there's nothing in there about any
24   efforts they made, nothing about their conduct in
25   trying to find Mr. Miller and tracking him down, and
```

```
                          Colloquy                       29
 1   there's nothing.  There's nothing about any source of
 2   information so I think that would be inappropriate to
 3   bring now before the jury that they did something that
 4   we're just hearing about now.  If we're talking about
 5   disseminating wanted flyers and talking to Naeem's
 6   father and brother at the house, well, I understand
 7   that.  That's in the discovery.  But anything else that
 8   they did beyond February of 2001 prior to Scranton
 9   calling and telling Newark they had a hit on a guy in
10   custody, I don't see how that could come in now.
11        THE COURT:  I disagree, Mr. Gordon.  It's
12   clear that that kind of information is more than
13   appropriate and, in fact, necessary to make -- to tie
14   in Mr. Miller's alleged acts at the time of
15   apprehension, unless there's evidence provided of
16   efforts made to locate Mr. Miller in the interim and
17   evidence of the fact that there is -- that he knew or
18   should have known the fact that he was wanted for
19   murder in New Jersey, and what he did or didn't do in
20   Scranton is not going to have a whole heck of a lot of
21   relevance.  So I think if I don't hear -- if I don't
22   hear that first your objection as to -- as to the
23   Scranton testimony would be appropriate.
24        MR. GORDON:  Well, now I'm confused, Judge,
25   if I may just again.  That's why my -- my objection
```

**STATE OF NEW JERSEY v NAEEM MILLER -- March 22, 2005**

Colloquy                                                          30

1  stood because there is no evidence in the record as to
2  what occurred between the time the wanted flyer being
3  disseminated and then the Scranton arrest.  That was
4  the basis of my argument.  Now The Court is saying, I
5  think -- and I could be wrong -- that it's -- it's more
6  than appropriate that evidence of something they did in
7  the interim would come in even though I don't know what
8  it is and it wasn't indicated in any report that was
9  turned over in this case.  The case wasn't indicted
10 until 2003, discovery turned over sometime after that.
11 If there had been efforts by law enforcement to arrest
12 Mr. Miller and track down leads and go and talk to
13 people, or whatever they did, presumably that would
14 have been memorialized in reports.  There were no
15 reports.  It's like The Court is saying to me now, I
16 would have had to guess or assume that those efforts
17 were made just because of the fact that now that he's
18 arrested in Pennsylvania the State wants to use that as
19 consciousness of guilt.  If the -- if the reports are
20 turned over and there's no evidence in the record at
21 this point that efforts were made, how -- how could I
22 properly be prepared to meet those efforts and how
23 could it be appropriate that information not turned
24 over and not even memorialized be brought before the
25 jury?

Colloquy                                                          31

1           THE COURT:  Well, because it happens.  I
2  don't think that the police were required every time
3  they made a phone call to make a note about it in the
4  report, and the fact that they didn't do that and that
5  therefore you don't know about it doesn't bar the --
6  the introduction of relevant testimony.  What's --
7           MR. DeMATTIA:  Judge, you stole my thunder.
8           THE COURT:  Okay.
9           MR. GORDON:  My objection noted for the
10 record.  Thank you, Your Honor.
11          THE COURT:  Noted.  Okay.  My preference
12 would be, I'm assuming the rest of the day for jury
13 selection might make sense to me unless we finish --
14 somehow miraculously we get a jury earlier this
15 afternoon than later my -- to minimize inconvenience to
16 the jury it might make sense to hear the WADE first
17 thing tomorrow morning.  So wherever we --
18          MR. DeMATTIA:  Should I call Detective
19 Muhammad and tell him to go about his business for
20 today?
21          THE COURT:  Yes, I would think that would --
22          MR. DeMATTIA:  I mean, he's a Newark
23 detective.  If I need to reach out for him we could
24 try.
25          THE COURT:  I think we could -- I think we

## STATE OF NEW JERSEY v NAEEM MILLER -- March 22, 2005

SHEET 17

```
                    Colloquy / Jury Instructions            32
 1    could go as far as we can with jury selection.  If
 2    miraculously we finish at 3 o'clock then we'll just end
 3    at 3 o'clock and have the WADE at 9 o'clock tomorrow
 4    morning.  Does that sound reasonable?
 5          MR. GORDON:  Yes, Your Honor.
 6          MR. DeMATTIA:  Judge, then I'll release him
 7    to tell him he can go back.
 8          THE COURT:  But tell him now to be here at 9
 9    o'clock tomorrow morning.  Okay?  We stand in recess.
10    We can bring the jury in and have them seated, and
11    we'll begin the process.
12          MR. DeMATTIA:  Five minutes, Judge, 10
13    minutes you think?
14          THE COURT:  Yes.
15          (Off the record.  Back on the record.)
16          THE COURT:  -- assigned here to Essex County.
17    As you know, we are here in order to begin the process
18    of selecting a jury for this case which is entitled the
19    STATE OF NEW JERSEY VS. NAEEM MILLER.  We are about to
20    begin the process that we call voir dire.  The purpose
21    of voir dire is very simple.  It's to obtain a jury
22    that is able to hear this case without any bias,
23    prejudice or preconceived ideas.  In short, the idea is
24    to select a fair jury.
25          As you know, the matter in dispute is between
```

```
                       Jury Instructions                    33
 1    the State of New Jersey and Naeem Miller.  It's a
 2    criminal case, and it arises out of an indictment
 3    returned by the Essex County jury wherein it is alleged
 4    that Naeem Miller on the 16th day of December, 2001, in
 5    the City of Newark, did purposely or knowingly murder
 6    Timothy Phillips by his own conduct by shooting him.
 7    It's also alleged that on that date and at that place
 8    that Mr. Miller did purposely, knowingly or recklessly
 9    under circumstances manifesting extreme indifference to
10    the value of human life, caused or attempted to cause
11    serious bodily injury to Stacy Davis by shooting him.
12    It is also charged that Mr. Miller on that date and at
13    that place did unlawfully possess a weapon and did
14    possess that weapon for an unlawful purpose.
15          I realize that jury service may be new to
16    some of you, so a few preliminary remarks by prove to
17    be helpful.  The first step in a jury trial, of course,
18    is selection of a jury.  The process is important
19    because both the State and the defendant are entitled
20    to jurors who are impartial and agree to keep their
21    mind open until a verdict is reached.  Jurors must be
22    as free as humanly possible from bias, prejudice or
23    sympathy and must not be influenced by pre-conceived
24    ideas.
25          Those of you selected as jurors on this case
```

## STATE OF NEW JERSEY v NAEEM MILLER -- March 22, 2005

SHEET 18

```
                        Jury Instructions                    34
 1    shall serve as judges of the facts.  In other words,
 2    you'll listen to the testimony of witnesses, examine
 3    any physical evidence introduced and thereafter
 4    determine the facts.  I am the judge of the law, and at
 5    the conclusion of this matter, after the evidence has
 6    been presented and counsel made their closing
 7    arguments, I'll tell you what the law is and you must
 8    apply that law to the facts in order to reach a fair
 9    and impartial verdict.  Although you may be qualified
10    to serve as a juror in most cases there may be
11    something that could disqualify you in this case or
12    make it embarrassing to serve.  In order to learn this
13    I'll ask you questions.  Please understand the
14    questions I'll ask are for a legitimate purpose and not
15    to simply pry into your personal affairs.  Do not
16    hesitate to speak your mind honestly and plainly.  It's
17    very important that you answer each question fully and
18    truthfully.  Keep in mind that there are no right or
19    wrong answers.  Truthful and honest answers are
20    necessary so that a fair and impartial jury can be
21    selected.
22            As we mature we all to some extent develop
23    certain biases, prejudices, fixed opinions and views.
24    We develop these from our families, others around us,
25    the media, and from our everyday experiences.  You are
```

```
                        Jury Instructions                    35
 1    entitled to be who you are, and to feel and think about
 2    things as you do.  It's important to recognize any
 3    biases, prejudices, fixed opinions and views that you
 4    may have and disclose them to me during jury selection.
 5    If for any reason my questions do not cover why you
 6    would not be able to listen with an open mind to the
 7    evidence in this case, or be able to reach a fair and
 8    impartial verdict, it's necessary that you volunteer
 9    this information to me when you are questioned.  If at
10    any time during jury selection you wish to discuss
11    anything with me concerning your ability to serve as a
12    juror, raise your hand and at the appropriate time I'll
13    speak to you outside the presence of the other jurors
14    but in the presence of the attorneys.  After I've
15    questioned each of you you may be excused as a juror by
16    me if in my opinion there's a valid reason why you
17    should not serve.
18            Each attorney may also excuse a limited
19    amount of jurors without giving any reason for doing
20    so.  In the event you are excused please do not
21    consider this an insult or take it personally.  It's
22    merely a part of the process employed in selecting a
23    jury as permitted by our court rules.
24            Now, as I indicated in this case, Mr. Naeem
25    Miller has been indicted by the Essex County grand jury
```

# STATE OF NEW JERSEY v NAEEM MILLER -- March 22, 2005

SHEET 19

|   | Jury Instructions | 36 |
|---|---|---|

```
 1   accusing him of the crimes of murder, aggravated
 2   assault, unlawful possession of a weapon and possession
 3   of a weapon for an unlawful purpose.  As I told you
 4   yesterday, our best estimate of the time it will take
 5   to try this case is approximately six full trial days,
 6   perhaps longer.  What that means, especially since we
 7   have Friday is a holiday and ordinarily we do not sit
 8   on trials on Fridays and Mondays, we anticipate that
 9   those six days will be today, tomorrow, part of the day
10   Thursday, next Tuesday, Wednesday and Thursday.  Now,
11   there's a possibility that it may extend beyond that,
12   and if the case does extend beyond that it will be the
13   -- the seventh day would probably be the following
14   Tuesday.  So you need to be aware of that schedule now
15   and I'll explain to you why momentarily.
16            But first, as a criminal case there are
17   certain principles of law that I must advise you of
18   even before we begin the process of voir dire.  First,
19   the indictment that I read to you and summarized is not
20   evidence of the defendant's guilt on the charges stated
21   in it.  The defendant has pled not guilty to the
22   charges and is presumed to be innocent.  Unless each
23   and every essential element of the offense charged in
24   the particular count of the indictment is proved beyond
25   a reasonable doubt, the defendant must be found not
```

|   | Jury Instructions | 37 |
|---|---|---|

```
 1   guilty of the offense.  The reverse is also true, if
 2   each element of an offense charged in a particular
 3   count of an indictment is proved beyond a reasonable
 4   doubt then the defendant must be found guilty of the
 5   offense charged in that particular count.  The burden
 6   of proving each element of the offense charged in each
 7   particular count of the indictment beyond a reasonable
 8   doubt rests upon the State, and that burden never
 9   shifts to the defendant.  It's not the obligation or
10   the duty of a defendant in a criminal case to prove
11   his innocence or offer any proof relating to his
12   innocence.  The State has the burden of proving a
13   defendant guilty beyond a reasonable doubt.  Some of
14   you may have served as a juror in civil cases where you
15   were told it's necessary to prove only that a fact is
16   more likely true than not true.  In criminal cases the
17   State's proof must be more powerful than that.  It must
18   be beyond a reasonable doubt.  The prosecution must
19   prove its case by more than a mere preponderance of the
20   evidence, yet not necessarily to an absolute certainty.
21            A reasonable doubt is a reasonable and honest
22   uncertainty in your minds about the guilt of the
23   defendant after you have given full and impartial
24   consideration to all the evidence.  A reasonable doubt
25   may arise from the evidence itself or from a lack of
```

**STATE OF NEW JERSEY v NAEEM MILLER -- March 22, 2005**

SHEET 20

```
                         Jury Instructions                    38
 1    evidence, and it's a doubt that a reasonable person
 2    hearing the same evidence would harbor.  Proof beyond a
 3    reasonable doubt is proof, for example, that leaves you
 4    firmly convinced of the defendant's guilt.  In this
 5    world we know very few things with absolute certainty.
 6    In criminal cases the law does not require proof that
 7    overcomes every possible doubt.  If based on your
 8    consideration of the evidence you are firmly convinced
 9    that the defendant is guilty of the crime charged you
10    must find him guilty.  If, on the other hand, you're
11    not firmly convinced of the defendant's guilt you must
12    give the defendant the benefit of the doubt and find
13    him not guilty.
14              You'll have to apply the law as I give it to
15    you regardless of your own feelings about it, and since
16    this is a criminal case any verdict returned by the
17    jurors must be unanimous.  That means simply that all
18    12 jurors who may be selected to deliberate must agree
19    upon any verdict returned to The Court.
20              Now I would like to introduce you to the
21    attorneys.  The State of New Jersey will be represented
22    throughout these proceedings by Assistant Prosecutor
23    Gregory DeMattia.  I would like to ask him to rise,
24    introduce himself, and to state the names of persons
25    who will either be mentioned during the course of the
```

```
                         Jury Instructions                    39
 1    trial or may be called as witnesses, and to specify the
 2    location the State claims to be the scene of the crime
 3    charged in the indictment.  Mr. DeMattia?
 4              MR. DeMATTIA:  Thank you, Your Honor.  Good
 5    morning, ladies and gentlemen.  As the judge as
 6    indicated my name is Gregory DeMattia.  I've been an
 7    Assistant Prosecutor in this County for about 20 years
 8    now.  I'm assigned to the Homicide Squad, and following
 9    is a list of potential witnesses in this case or names
10    that you may hear, people that may be called.  From the
11    Newark Police Department Police Officer V. Poole
12    (phonetic), Police Officer G. Ramos, who is now
13    Sergeant George Ramos, Detective Joseph Webber,
14    Detective Louis Alcon, Detective Murad Muhammad,
15    Detective John LeBella.  From my office, the
16    Prosecutor's Office, Homicide Squad, Investigator
17    Stanley Rosa, Investigator Nicole Berry (phonetic) and
18    Steven White.  You may hear the name of Investigator
19    Dan Powell mentioned.
20              The lay witnesses are the following
21    individuals:  Kevin Phillips from Newark, Felicia
22    Wright from Newark, Stacy Davis from Newark, Damos
23    Johnson from Newark, Thomas Anderson, Esq. from Newark.
24    The following is a person from the Medical Examiner's
25    Office, Dr. Lila Perez.  She was a coroner from the
```

## STATE OF NEW JERSEY v NAEEM MILLER -- March 22, 2005

SHEET 21

Jury Instructions                                                    40

1   County of Essex, and from the Scranton, Pennsylvania
2   Police Department Police Officer Kyle Kemp and Police
3   Officer Tim Charles.  Oh, I'm sorry.  The State alleges
4   the following date and location to be pertinent to this
5   trial:  On December 16th, 2001 at approximately 2:35
6   a.m. outside a location known as Toby's or Roland's
7   Lounge, at 966 Bergen Street, City of Newark.
8           THE COURT:  Thank you, Mr. DeMattia.  Now
9   defendant will be represented throughout this
10  proceeding by Mr. Jonathan Gordon.  I would like to ask
11  him to rise, introduce himself and his client, if he
12  chooses, and to state the names of any other persons
13  who will either be mentioned during the course of the
14  trial or may be called as witnesses.  Mr. Gordon?
15          MR. GORDON:  Thank you, Your Honor.  Good
16  morning, everyone.  My name is Jon Gordon.  I'm an
17  attorney.  I'm in my 15th year of practice now.  I have
18  an office here in Newark, New Jersey.  Ladies and
19  gentlemen, in this case a couple of names that you
20  might hear are Anjuana Williams of Newark, New Jersey,
21  also James Haggerty, Jr., an investigator of mine.  In
22  this case, ladies and gentlemen, the accused person is
23  Naeem Miller.  I represent him in this case.
24          THE DEFENDANT:  How are you all doing?  Good
25  morning.

Jury Instructions                                                    41

1           MR. GORDON:  If you recognize Naeem or if you
2   recognize me when the judge asks you please let us
3   know.  Thank you very much.
4           THE COURT:  Thank you, Mr. Gordon.
5           MR. GORDON:  Thank you, Your Honor.
6           THE COURT:  And as much as has been stated
7   that a police or law enforcement officer may be called
8   as a witness, I instruct you that jurors must accept
9   and follow the principle of law that you must measure
10  and weigh the testimony of a police or law enforcement
11  officer by the very same standards you would measure
12  and weigh the testimony of any other witness, giving no
13  more nor less weight to his or her testimony simply
14  because he or she is a police or law enforcement
15  officer.
16          Now we begin the voir dire process.  We start
17  by asking two general questions.  When I ask you the
18  question, if you have an affirmative response to the
19  question I'm going to ask you only to raise your hand.
20  When I call on you I'm going to ask you only to stand
21  and then state your name.  When I find your name on the
22  list and I make the appropriate notation then you can
23  be seated.  We will subsequently inquire with more
24  specificity why you answered the way in which you did.
25                  (Jury Selection)

## STATE OF NEW JERSEY v NAEEM MILLER -- March 22, 2005

SHEET 22

```
                              Colloquy                        42
 1          THE COURT:  All right, ladies and gentlemen,
 2   it is now 4 o'clock.  We have not yet reached the point
 3   where we can administer the oath to the seated jurors.
 4   We are going to do that after an additional proceeding
 5   that has to occur outside the jurors' presence.  Since
 6   the jury is not being sworn I cannot release those of
 7   you in the remainder of the jury pool until that occurs
 8   in the event that something happens between now and the
 9   time in which the jury is sworn.  So that I'm going to
10   ask you all to return tomorrow as well.  That
11   proceeding is going to take less than an hour and we're
12   going to be doing that at 9 o'clock tomorrow morning,
13   so I'm going to ask everybody to return here at 10
14   o'clock tomorrow morning.  If all goes well those of
15   you in the remainder of the jury pool will be excused
16   at that time.  I can't excuse you until then and this
17   jury is not sworn.  So as a result everyone would need
18   to check out and then check in again with Jury Control.
19          The usual admonitions, allow me to remind you
20   -- I'll give them to you in more detail tomorrow -- but
21   don't discuss the case among yourselves or with anybody
22   else.  Don't even mention what kind of a case that you
23   believe that you'll be sitting as a juror on because to
24   mention that to somebody invites a response and that
25   would be improper.  You can only make your decisions
```

```
                              Colloquy                        43
 1   with regard to this case based upon what you hear here
 2   in this courtroom from the witness stand or any
 3   documents that may be or tangible items that may be
 4   admitted into evidence, and as a result of which you
 5   hear from me with regard to my instructions as to the
 6   law.  You can tell your family and your employers that
 7   you're probably being seated as a juror in a criminal
 8   case and you could tell them how long you expect it to
 9   last, no more.
10          Obviously remain out of contact with anybody
11   who has any -- any connection with this case.  If
12   somebody should contact you do not report that to your
13   fellow jurors or to anyone else other than somebody
14   connected with the court staff and make sure you report
15   that to us immediately.  The officers will be available
16   to respond to any questions you may have on your way
17   out.  They will certainly either answer your question
18   or direct you to who can.  You also will know that if
19   there is any question that can only be answered by me
20   I'll certainly be available for a period of time in
21   order to respond to any of those questions.  With that,
22   ladies and gentlemen, we'll see you back here at 10
23   a.m. tomorrow morning.  Thank you very much.
24                    (Proceedings concluded)
```

**Elite Transcripts, Inc.**
14 Boonton Avenue, Butler, New Jersey  07405
973-283-0196    FAX 973-492-2927

## STATE OF NEW JERSEY v NAEEM MILLER -- March 22, 2005

SHEET 23

### CERTIFICATION

I, Catherine J. Weigel, the assigned transcriber, do hereby certify that the foregoing transcript of proceedings in the Essex County Superior Court, on March 22, 2005, Tape No. 2, Index No. 09:19:29 - 10:45:30 and 16:01:17 - 16:05:18, is prepared in full compliance with the current transcript format for judicial proceedings and is a true and accurate compressed transcript of the proceedings as recorded to the best of my knowledge and ability.

*Catherine Weigel*

Catherine Weigel    AOC#490
ELITE TRANSCRIPTS, INC.
BUTLER, NEW JERSEY    07405                     September 9, 2005