Not for Publication

**United States District Court
for the District of New Jersey**

NAEEM MILLER,

                 Petitioner

    v.

Civil No.: 10-2492 (KSH)

MICHELLE RICCI; PAULA T. DOW,

          Respondents

**OPINION**

**Katharine S. Hayden, U.S.D.J.**

       Naeem Miller, an inmate of the New Jersey State Prison, challenges his 2005 Essex

County conviction by petitioning for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  For

the following reasons, the petition will be denied.

## I. Introduction

       A)     *Indictment and Trial*

       In 2003, Miller was charged with the first-degree murder of Timothy Phillips (N.J.S.A.

§ 2C:11-3(a)(2)), the aggravated assault of Stacy Davis (N.J.S.A. § 2C:12-1(b)(1)), and two

firearms offenses.  (*See* Indictment [D.E. 14-3].)  The facts of the case, and an overview of the

eventual trial, were previously set forth by the Appellate Division:

> In the early morning hours of December 16, 2001, Kevin Phillips and his brother,
> Timothy, were at Roland's Bar in Newark.  Shortly before closing, Kevin was
> dancing with a woman when he became involved in an altercation with another
> male, about Kevin's size, 6'3" tall, 360 pounds, who told Kevin to stop dancing.
> When Kevin refused to stop dancing with the woman, the two men began to push
> and punch each other.  During the fight, Kevin slipped and fell to the floor and

other patrons of the bar eventually pulled the unidentified male off Kevin, who sustained a bloody nose and mouth.

When Timothy saw his brother's condition, he exited the bar and began questioning the crowd outside in an effort to learn who had assaulted his brother. Timothy challenged whoever had fought Kevin to fight him.  In the meantime, Kevin was having difficulty breathing because of the bleeding; he went behind a parked car to inspect his injuries in a side view mirror.  Kevin testified he was bent down "fixing-trying to get myself together and I heard the shots coming from across the street, so I stayed where I was, you know, to avoid getting hit."  Kevin was only able to see the shooter-from the waist down. He was "small build, slim[.]"  Kevin was unable to identify him.

Around the same time, Stacy Davis exited the bar.  He saw Timothy, whom he knew, arguing with a young skinny black man, with dreadlocks, later identified as [Miller].  As Davis was walking away from the bar, he suddenly fell to the ground.  Realizing that he had been shot in the leg, Davis crawled behind a parked car.  From that vantage point, pe[e]king around the rear bumper, Davis observed [Miller] shoot Timothy multiple times with a large black gun while Timothy was on the ground.

Five days after the shootings, while Davis was in the hospital, he identified [Miller] as the shooter from a sequential photographic lineup. The photograph depicted [Miller] with dreadlocks and without a beard, as Davis recalled [Miller's] appearance on the night of the shooting.  But, in the intervening period between the shooting and the trial, [Miller] had cut off his dreadlocks and had grown a beard. Davis was unable to identify [Miller] as the shooter.  Though he continued to identify [Miller], as depicted in the photograph, as the shooter, Davis said repeatedly, "That can't be him there," referring to [Miller] in the courtroom.

Also at the bar on the date in question was Felicia Wright.  She testified that as she was leaving the bar, she heard six or seven gunshots.  After exiting onto the street, she saw Timothy lying on the ground and people were running.  Among those running, Wright saw [Miller], whom she knew by name. She knew [Miller] both from the neighborhood and as the cousin of her child's father.  According to Wright, during the course of the fifteen or so years that she had known of [Miller], he had worn his hair in dreadlocks.  She had never before seen him with his hair cut as it was at trial, nor had she seen him before with a beard, as he appeared in court.  Wright, who was familiar with guns, saw that [Miller] was carrying a black automatic gun.  She did not actually see [Miller] shoot Timothy Phillips, but on January 9, 2002, Wright identified [Miller's] photograph as the man she saw with the gun.

An arrest warrant for [Miller] was issued on January 18, 2002, but efforts to locate him were unsuccessful. Approximately two years later, the police in Scranton, Pennsylvania, took [him] into custody.  He was returned to New Jersey and eventually tried on the charges lodged in Indictment No. 03-05-1830.

*State v. Miller*, No. A-6464-04T4, 2007 WL 1428943, at *1–2  (App. Div. Jan. 8, 2007).

In 2005, following a seven-day Essex County jury trial before the Honorable Thomas Vena—the defense called no witnesses, and Miller did not testify—Miller was convicted of all charges.  He was sentenced to 1) a prison term of 30 years, with 30 years of parole ineligibility, for the murder conviction, and 2) a consecutive seven-year term, with parole ineligibility for 85% of that term pursuant to NERA, for the aggravated assault conviction.  A four-year sentence on one gun conviction was run concurrent to the murder and aggravated assault sentences, while the other gun conviction merged with the murder and aggravated assault convictions for sentencing purposes.  (*See* Judgment [D.E. 14-4].)

B)     *New Jersey Direct Appeal*

Miller raised four grounds of error in his counseled direct-appeal brief:

**1.**  The Trial Court's Identification Instructions, Which Both Misstated the Evidence and Summarized It in an Unbalanced and Misleading Manner, Deprived [Miller] of His Rights to Due Process of Law and a Fair Trial.

**2.**  The Trial Judge's Failure to Instruct the Jury on Aggravated and Reckless Manslaughter as Lesser-Included Offenses of Murder Was Reversible Error in Light of the Clear Mandate of the New Jersey Supreme Court in *State v. Jenkins*, 178 N.J. 347 (2004).

**3.**  The Court's Confusing and Contradictory Instructions, Which At One Point Erroneously Told the Jury That It Could Convict the Defendant of Aggravated Assault If It Found That He "Purposely, Knowingly, or Recklessly . . . Attempt[ed] to Cause Serious Bodily Injury," Requires Reversal of the [Aggravated Assault] Count.

**4.**  The Sentence Imposed is Manifestly Excessive.

3

(Br. and Appendix on Behalf of Defendant-Appellant i {hereinafter "Dir.App.Br."} [D.E. 14-5].)

Ground one invoked the United States and New Jersey Constitutions; the remainder of the

grounds were argued primarily as state-law claims.  For example, the consecutive sentences were

alleged to be error under *State v. Yarbough*, 100 N.J. 627, 643–44 (N.J. 1985).  (Dir.App.Br. 23–

24.)  With the exception of ground four, appellate counsel acknowledged that each of these

issues was "not raised below."

　　　　The Appellate Division affirmed in an unpublished *per curiam* opinion.  After

summarizing the relevant facts, the court reviewed each of Miller's core claims for plain error

because none had been preserved.  *See Miller*, 2007 WL 1428943, at *3.  It identified an error in

the trial judge's summary of evidence (relating to ground one of the appeal), but held that "the

court's mistake did not have the clear capacity to bring about an unjust result."  *Id.*  With regard

to the lesser-included charge claim, the Appellate Division decided that such a charge was not

clearly appropriate in light of the facts of the case.  *Id.* at *4.  The attempted aggravated assault

instructions in ground three initially contained an erroneous reference to a "reckless" *mens rea*

(an error in the indictment), but the trial court then "properly instructed the jury on the elements

of aggravated assault," and the charge "taken as a whole, properly explained the intent necessary

to convict defendant on the charge of aggravated assault."  *Id.* at *5.  Finally, the Appellate

Division found no error in the imposition of consecutive sentences.  *Id.*  The New Jersey

Supreme Court denied a petition [D.E. 15-5] for certification.  *See State v. Miller*, 190 N.J. 392

(N.J. 2007).

C)   *State Petition for Post-Conviction Relief*

Miller then filed a petition for post-conviction relief (PCR) on May 17, 2007.  He initially proceeded *pro se*.  Later, his efforts were supplemented with a brief filed by an attorney, who raised the following grounds for relief[1]:

**1.**   Petitioner's Trial Attorney Rendered Ineffective Assistance of Counsel by Failing to Object to the Court's Identification Instruction Which Both Misstated the Evidence and Summarized It in an Unbalanced and Misleading Manner.

**2.**   Petitioner's Trial Attorney Rendered Ineffective Assistance of Counsel by Failing to Request that the Court Instruct the Jury on Aggravated and Reckless Manslaughter.

**3.**   Petitioner's Trial Attorney Rendered Ineffective Assistance of Counsel by Failing to Object to the Court's Confusing and Contradictory Jury Instructions.

**4.**   Petitioner's Trial Attorney Rendered Ineffective Assistance of Counsel by Failing to Move for a Judgment of Acquittal Regarding the Unlawful Possession of a Weapon Charge.

(See Br. in Support of Motion for Post-Conviction Relief {hereinafter "PCR.Br."} ii [D.E. 16-1] (typographical errors corrected).)  Three of the four grounds greatly resembled the substantive claims raised on direct appeal.  In fact, PCR counsel's brief repeated large portions of appellate counsel's brief, varying primarily to emphasize trial counsel's alleged ineffectiveness instead of the trial court's errors.  (*Compare, e.g.*, Dir.App.Br. 19, *with* PCR.Br. 15.)  Ground four was premised on an alleged failure to present evidence regarding Miller's possession of a gun permit. (PCR.Br. 16–17.)

---

[1] Miller's original *pro se* brief does not appear to be a part of the record.  The record does contain a series of letters showing Miller's dissatisfaction with PCR counsel's brief, such as its failure to raise certain claims that had been put forward in the original *pro se* papers.  In a November 9 letter to Judge Vena, PCR counsel presented those claims for Judge Vena's consideration.  (*See* Nov. 9 Letter [D.E. 16-4].)

Judge Vena held an evidentiary hearing, during which he observed that "[e]ach and every one of those issues" relating to ineffective assistance of counsel "w[as] addressed by the Appellate Division" which had "affirmed the convictions." (PCR Tr. 8:18–9:10 [D.E. 14-2].) Judge Vena then sought to contextualize the ineffectiveness claims in light of the Appellate Division's decision on direct appeal:

> So technically the Appellate Division decision is on a plain error basis, and the . . . way I read the [PCR] petition is a suggestion that somehow or another if, instead of a plain error standard, the defense counsel had objected and had made the request that the defense is now . . . suggesting needed to be requested, either I would have acted differently, or if I had acted in exactly the same way, the Appellate Division, using a different standard than plain error, would have considered reversing [my] decision

(PCR Tr. 10:15–25.) PCR counsel agreed with this description of the claims. (PCR Tr. 11:7–9.)

Miller's trial attorney was called to testify at the PCR hearing. PCR counsel asked him only about his failure to request that the judge charge the jury on lesser-included offenses. He responded that he had not "reviewed his file or had any contact with Mr. Miller . . . since the trial" several years before. (*See* PCR Tr. 20:19–27:25.) Trial counsel repeatedly testified that he could not recall the basis for his decision to not request that lesser-included charges be given to the jury. (*See, e.g.*, PCR Tr. 29:14–20.) Judge Vena, having reviewed the evidence, concluded that there was no basis to charge a lesser-included offense, both because "there's not one iota of evidence that this crime was anything other than intentional" and because it appeared to conflict with trial counsel's identification-based strategy. (PCR Tr. 39:6–14, 40:18–41:7.)

Judge Vena denied the PCR petition in February 2008. (*See generally* PCR Op. [D.E. 16-2].) He ruled that certain of Miller's claims, such as the *pro se* prosecutorial misconduct claim, were barred by the "ground not previously asserted" PCR rule, N.J. Ct. R. 3:22-4(a). (PCR Op. 6.) Reaching the first three ineffectiveness claims brought by counsel, Judge Vena held that they were "procedurally barred because they were already raised on appeal"

(referencing N.J. Ct. R. 3:22-5); in the alternative, "even if they were not procedurally barred, the arguments would still fail" because Miller would not be able to show either deficient performance by counsel or prejudice flowing from these alleged errors, regardless of the difference between plain-error review and harmless-error review.  (*See* PCR Op. 8–9.)  The fourth ineffectiveness claim, alleging that counsel should have moved for acquittal on a weapons charge, was "procedurally barred . . . since it should have been raised on appeal" and was otherwise meritless because trial counsel "did in fact request such relief."  (PCR Op. 10.)  Miller's remaining *pro se* claims were adjudged to be meritless and/or procedurally barred. (PCR Op. 10.)

Through counsel, Miller raised on PCR appeal the identification instruction, lesser-included offense, and "confusing jury instruction" ineffectiveness claims, as well as a claim of trial counsel's conflict of interest that (he asserted) he had asked PCR counsel to raise below. (*See generally* Br. and App'x for Def.-Appellant [D.E. 16-3].)  He stressed that the reason for raising these claims as ineffectiveness claims, despite the disposition on direct appeal, was based on the difference between the "lofty" plain-error standard of appellate review and the standard that would otherwise have applied to claims preserved at trial.  (Br. and App'x for Def.-Appellant 10–11.)  Miller later filed a *pro se* supplement in which he elaborated upon trial counsel's alleged conflict of interest: trial counsel had previously represented Timothy Phillips on more than one occasion.  (*See generally Pro Se* Supp. Letter Br. [D.E. 17-2].)

The Appellate Division again affirmed in an unpublished *per curiam* opinion, holding that the ineffectiveness claims were barred by a New Jersey court rule prohibiting a PCR petition from raising any ground previously adjudicated on the merits.  *See State v. Miller*, No. A-5571-07T4, 2009 N.J. Super. Unpub. LEXIS 2751, at *5–6 (App. Div. Nov. 4, 2009).  And with regard

to Miller's *pro se* attorney-conflict claim, the court held essentially that there was no apparent conflict, and that in any event Miller had been informed of counsel's previous representation of the decedent and had waived any conflict on the record. *See id.* at *9–10. Miller's counseled petition for certification [D.E. 17-6] was denied via order entered on February 25, 2010. *See State v. Miller*, 201 N.J. 274 (N.J. 2010).

      D)     *Federal Habeas Petition*

Miller filed this *pro se* 28 U.S.C. § 2254 petition on April 26, 2010. [D.E. 1.] He raised five grounds for relief:

**1.** Ineffectiveness of trial counsel for "failing to object to the court['s] identification instruction which both misstated the evidence and summarized it in an unbalanced and misleading manner";

**2.** Ineffectiveness of trial counsel for "failing to request that the court instruct the jury on aggravated and reckless manslaughter";

**3.** Ineffectiveness of trial counsel for "failing to object to the court's confusing and contradictory jury instructions";

**4.** Ineffectiveness of trial counsel for "failing to move for a judgment of acquittal regarding the unlawful possession of a weapon charge"; and

**5.** Ineffectiveness of trial counsel due to an "actual conflict of interest."

He was advised of his rights under *Mason v. Meyers*, 208 F.3d 414, 418 (3d Cir. 2000), but did not choose to amend his petition. [D.E. 2.] The state filed its answer and exhibits [D.E. 10–17] and Miller filed a traverse [D.E. 20].

8

## II. Jurisdiction and Standard of Review

The Court has jurisdiction over this petition pursuant to 28 U.S.C. §§ 2241 and 2254. *See Eley v. Erickson*, 712 F.3d 837, 845 (3d Cir.), *cert. denied*, 134 S. Ct. 254 (2013). Because Miller is *pro se*, his submissions are to be given liberal construction. *See Hunterson v. Disabato*, 308 F.3d 236, 243 (3d Cir. 2002).

Ordinarily, claims in § 2254 petitions are reviewed under the deferential Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) standard contained in 28 U.S.C. § 2254(d). The statute prohibits a federal court from granting relief on a federal claim addressed on the merits by a state court unless the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law (as derived from Supreme Court holdings), or was otherwise based on an unreasonable determination of the facts. *See Fahy v. Horn*, 516 F.3d 169, 180 n.9 (3d Cir. 2008) (citing 28 U.S.C. § 2254(d)). When the claim in question alleges ineffective assistance of counsel, the "clearly established federal law" is *Strickland v. Washington*, 466 U.S. 668 (1984), which provides "a two-pronged test for reviewing ineffective-assistance-of-counsel claims . . . [: a] petitioner must prove both (1) that 'counsel's representation fell below an objective standard of reasonableness' and (2) that petitioner was prejudiced by that subpar performance." *Collins v. Sec'y of Pa. Dep't of Corr.*, No. 12-3472, ___ F.3d ___, 2014 WL 341062, at *11 (3d Cir. Jan. 31, 2014) (quoting *Strickland*, 466 U.S. at 688, 694); *see also Hinton v. Alabama*, 134 S. Ct. 1081, 1087–88 (2014) (per curiam) (applying *Strickland* as clearly established federal law) .

There is some question about whether Miller's ineffectiveness claims were actually addressed "on the merits" by the New Jersey courts. As a general matter, if the state courts do not reach the merits of a properly presented federal claim, "the deferential standards provided by

AEDPA . . . do not apply." *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).  Judge Vena

reached the merits of certain claims that he otherwise deemed barred as already adjudicated by

N.J. Ct. R. 3:22-5, but the Appellate Division affirmed on procedural grounds only.  In this

Circuit, § 2254(d) deference does not apply to claims that are disposed of on solely procedural

grounds on appeal, regardless of whether a lower state court reached the merits.  *See Thomas v.*

*Horn*, 570 F.3d 105, 115–16 (3d Cir. 2009).

       The question thus presented is whether an ineffective assistance claim is "previously

litigated" when the underlying substantive claim is raised on direct appeal; or, as framed by the

New Jersey courts, whether the ineffective assistance claim and the underlying substantive claim

are "identical or substantially equivalent."  *See State v. Afanador*, 151 N.J. 41, 51 (N.J. 1997).

This Court is aware of other unpublished New Jersey appellate division opinions concluding as

much.  *See, e.g.*, *State v. Williams*, No. A-1057-04T4, 2005 WL 3617744, at *5 (App. Div. Jan.

9, 2006).  On the other hand, ineffectiveness claims and underlying substantive claims are

sometimes treated as distinct claims, such as for the purposes of exhaustion.  *See Manicioto v.*

*Tennis*, No. 08-4347, 2009 U.S. Dist. LEXIS 129899, at *13–14 n.7 (E.D. Pa. May 12, 2009)

(collecting cases).

       The Court need not answer this question today.  As discussed further below, because the

same result is reached under the pre-AEDPA mixed de-novo/presumed-to-be-correct approach—

*see, e.g.*, *Jacobs v. Horn*, 395 F.3d 92, 100 (3d Cir. 2005)—the Court generally will review the

properly presented ineffectiveness claims under the pre-AEDPA standard, but will give AEDPA

deference to the findings and decisions on the underlying substantive claims made by the

Appellate Division on direct appeal.  *See Taylor v. Horn*, 504 F.3d 416, 453 (3d Cir. 2007)

(reviewing *de novo* because "under either standard of review, the claim lacks merit").

### III. <u>Procedural Defenses</u>

In its answer, the state raises three procedural affirmative defenses, which it presents to preclude a decision on the merits of the petition.  Two of these pertain to the entire petition or equally affect several claims: the timeliness of the petition as a whole and the procedural default of the "previously adjudicated" ineffectiveness claims.

A)      *Timeliness*

With certain exceptions not relevant here, § 2254 petitions are subject to a one-year filing deadline that starts running when the judgment of conviction becomes "final."  *See* 28 U.S.C. § 2244(d)(1)(A).  The clock stops during any period in which "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2); *see, e.g.*, *Wall v. Kholi*, 131 S. Ct. 1278, 1288 (2011).

The state asserts that this petition should be denied as filed beyond the one-year period, framing the question as "whether or not the gaps in time between the conclusion of the time for direct appeal and all other filings for collateral relief totaled more or less than one year in this case."  (Answer 34.)  "[S]ince the AEDPA one-year time limitation expired before the filing of the habeas petition  . . . this petition should be dismissed for being filed beyond the federal statute of limitations."  (Answer 35.)

Even if the dates presented by the state are taken at face value,[2] they do not add up to over a year of untolled time.  A little over a month passed between April 4 and May 17 in 2007,

---

[2] The state incorrectly calculates the periods of tolling.  April 4, the date the New Jersey Supreme Court denied certification, is not the date Miller's conviction became "final" under AEDPA, because Miller still had 90 days to file a petition for certiorari with the United States Supreme Court.  *See Kapral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999).  Thus, no time at all "elapsed" between the end of direct review and the beginning of PCR review.  Second, state post-conviction proceedings were pending until February 2010, when the New Jersey Supreme Court denied certification on PCR review, and not November 2009, when the Appellate Division affirmed.  Third, under the operation of the prisoner mailbox rule, the date of filing of the federal habeas petition is likely earlier than the May 2010 date of its receipt by the Clerk of the Court.  *See Pabon v. Superintendent S.C.I. Mahanoy*, 654 F.3d 385, 391 n.8 (3d Cir. 2011).

11

and a little over six months separated November 4, 2009 and May 15, 2010.  The state does not argue that the PCR petition was improperly filed or otherwise failed to toll the limitations period. The Court thus holds that the federal habeas petition was timely filed well within the one-year statute of limitations.

      B)    *Procedural Default*

The state also contends that certain of Miller's claims are procedurally defaulted.  *See Holland v. Horn*, 519 F.3d 107, 112 (3d Cir. 2008) (discussing procedural default doctrine). This argument seems to rest on two grounds: first, that those claims that were already raised on direct appeal are now directly barred in this Court by the N.J. Ct. R. 3:22-5, the "previously adjudicated" rule; and second, "[t]o the extent that the issues referenced are presented again under a new moniker in this habeas petition . . . [s]ince the issues are barred by state court procedural rules, this Court should dismiss those portions of petitioner's application."  (Answer 35–36.)

Neither argument is convincing.  If the state intends to suggest that N.J. Ct. R. 3:22-5 operates directly to bar federal-court consideration of matters actually adjudicated in state court, then the state is incorrect.  And if the argument is that claims deemed "previously litigated" under N.J. Ct. R. 3:22-5 are procedurally defaulted, case law holds to the contrary.  "When a state court declines to review the merits of a petitioner's claim on the ground that it has done so already, it creates no bar to federal habeas review."  *Cone v. Bell*, 556 U.S. 449, 466 (2009); *cf. Boyd v. Warden*, 579 F.3d 330, 370 (3d Cir. 2009) (en banc) ("[T]reating Pennsylvania's 'previously litigated' rule as a procedural default would contravene the very purpose of that doctrine: to ensure that state courts have had an opportunity to address [a petitioner's claims] in the first instance.") (internal quotation marks & citation omitted).  Thus, N.J. Ct. R. 3:22-5 does

not create a blanket procedural default of the claims to which it was applied (or to which it would now be applied) in the state court.

## IV. <u>Discussion</u>

As acknowledged by Miller's PCR counsel at the hearing before Judge Vena, Miller's ineffective assistance arguments are, by and large, an attempt to win relief based on the differing standards of review applied to claims that are properly preserved versus those that were not raised below. For the following reasons, the Court finds that the Appellate Division's disposition on direct appeal prevents Miller from meeting the requirements of *Strickland* on the majority of his claims; and to the extent that the Appellate Division "missed" one of the subparts of the claims on direct appeal, it is clear that Miller's counsel still would not be judged constitutionally ineffective for the relevant conduct. The remaining claims are meritless or defaulted.

A)      *Ground One: Ineffective Assistance Based on Failure to Object to Identification Instruction*

1) The Claim

Miller argues that his trial counsel was ineffective for failing to properly object to two errors in Judge Vena's identification instructions to the jury. First, "although Kevin Phillips[, the victim's brother,] testified that he [did] not see the shooter's face and could not identify him . . . the judge erroneously told the jury that Phillips had identified [Miller] as the shooter." Second, "the court's identification instruction was notably one-sided, presenting only the state's version of the evidence." (Pet. §12A.) Miller raised the substantive version of the first part of this claim on direct appeal, arguing that, "[b]y erroneously instructing the jury that Kevin Phillips had positively identified Miller, the court distorted the evidence in a manner that immeasurably bolstered the State's relatively weak identification case, thereby abdicating its role as impartial

13

moderator and improperly influencing the jurors' determination of critical factual issues."
(Dir.App.Br. 12.)

At trial, Kevin Phillips was the second witness called by the state (the first was Sergeant George Ramos of the Newark Police Department), and he testified at length about the evening in question, including the initial altercation and his brother Timothy's reaction.  (*See* 3/23/05 Tr. 80:13–86:1 [D.E. 12-3].)  Kevin said that, after the shooting, he "observed . . . a gentleman from the waist down, small build . . . slim silhouette . . . slid[e] on top of my brother and sho[o]t some more times."  (3/23/05 Tr. 89:14–17.)  But Kevin *did not* "ever get a look at that individual's face" and could not "tell [the questioning prosecutor] today who that individual was if [he] saw him again."  (3/23/05 Tr. 89:18–23.)  Nor did Kevin connect Miller to the person with whom he fought inside the bar.  Despite this, Judge Vena's instructions to the jury contained the following statement:

> The State has presented the testimony of Felicia Wright, Stacey Davis, and Kevin Phillips.  You will recall that these witnesses identified—identified the defendant as the person who committed the offenses charged.  The State also presented testimony that on a prior occasion, before this trial, identified the defendant as the person—or some of these witnesses identified the defendant as the person who committed these offenses.  According to the witnesses, their identification of the defendant was based upon the observations and perceptions that they made of the perpetrator at the time the offense was being committed.

(3/30/2005 Tr. 80:15–81:2 [D.E. 13-2].)

With regard to the alleged emphasis on the state's version of the evidence, Miller pointed to witness/injured party Stacy Davis's "repudiat[ion of]" his identification of Miller as the shooter" and witness Felicia Wright's admission that she became "more convinced" that Miller was the shooter—leading in part to her positive identification—when she heard others saying that he was the culprit.  (Dir.App.Br. 5, 12.)  Miller was referring to Wright's testimony, elicited on cross, that it was "possible" that she had been influenced by talk on the street in giving her

identification of Miller as the assailant, although elsewhere on redirect Wright said that she was "certain it was him" even before she heard others discuss his guilt. (*See* 3/23/05 Tr. 166:4–22.) Meanwhile, while Davis had previously identified Miller as the shooter, at trial he said in effect that the defendant "can't be" the person he saw. (3/29/2005 Tr. 44:15–25 [D.E. 13-1].) Miller contended, in sum, that Judge Vena should have included these details in his jury instructions.

2) The Direct-Appeal Opinion

Discussing the inclusion of Kevin Phillips "among the witnesses who had identified defendant as the shooter," the Appellate Division thought that Judge Vena "misspoke" to the extent that Phillips was included among the witnesses identifying Miller. *Miller*, 2007 WL 1428943, at *3. Judge Vena's possible mistake, however, occurred in the larger context of testimony and statements emphasizing that Kevin had not made a positive ID. Kevin's own testimony on that point was "unequivocal," and "[t]he jurors also heard both counsel discuss in their respective summations that Kevin did not identify defendant as his brother's shooter."[3] *Id.*

---

[3] Those statements, which the Appellate Division excerpted in part, were as follows.

Miller's attorney:

> If the witnesses at the scene of the shooting either say Naeem isn't the person that was there, as Stacey Davis (phonetic) did from that witness stand, or say to you, as Felicia Wright . . . did after 30 minutes of cross-examination, I'm not sure, and we know Kevin Phillips . . . , who was there was never able to see the person who was the shooter that night, if those people that were there can't tell you that they're certain that Naeem is the person that was shooting that night, how in the world would a jury go in the room and decide that they believe that Naeem is the shooter.

(3/30/2005 Tr. 15:9–20.) Later, counsel returned to Kevin's failure to see who shot at Timothy:

> But at that moment he wasn't in a great position to see or identify anyone. And in fact, I think he told you straight out and straight up, he didn't know who did it. If he knew who shot his brother I think he would have told you. He didn't know.

(3/30/2005 Tr. 23:3–8.)

The prosecutor:

> He cannot see who the shooter is. However, he says that that wasn't that guy inside the bar with him because the silhouette, the figure, was a slim individual. He only could see him from the

at *3.  Further, the jurors "heard a read-back, during their deliberations, of Kevin's testimony." *Id.* at *4.  Given this broad context, the Appellate Division was "convinced the fleeting mention of Kevin as one of the witnesses who identified defendant as the shooter did not have the capacity to mislead the jurors or to cause them to reach a result they otherwise would not have reached."  *Id.*

The Appellate Division does not appear to have separately reached the second part of Miller's claim, which alleged an "imbalanced" summary of the record by Judge Vena.  Although the claim was raised by Miller's various attorneys at each stage of the proceedings, neither the Appellate Division nor Judge Vena (in the merits portion of the PCR opinion) directly spoke of it.

### 3) Discussion

In order to demonstrate *Strickland* prejudice, Miller must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Shotts v. Wetzel*, 724 F.3d 364, 375 (3d Cir. 2013) (quoting *Strickland*, 466 U.S. at 694).  He has not done so, with regard to either the effect on his appeal or the effect on the trial itself.

The Appellate Division reviewed the jury charge under the plain error standard, which allows for reversal if the error was "clearly capable of producing an unjust result."  *See State v. Adams*, 194 N.J. 186, 207 (N.J. 2008) (citing N.J. Ct. R. 2:10-2).  Miller does not identify—and

---

waist down or above the waist down.  He couldn't see his face, unfortunately.  But he said it wasn't the guy or looked like the guy that was in the bar because we know he's almost as big as Mr. Phillips himself. . . . And basically that's what Mr. Kevin Phillips has to contribute in the trial where we're accusing Naeem Miller of killing his brother.  Very truthful testimony I submit to you.

(3/30/2005 Tr. 49:3–10, 50:14–17.)

did not generally clarify before the state courts—the standard to be applied had counsel timely objected. Assuming that the proper standard was harmless error, *see State v. Josephs*, 174 N.J. 44, 94–95 (N.J. 2002), Miller would prevail on direct appeal only if there was "some degree of possibility that the error led to an unjust result. The possibility must be real, one sufficient to raise a reasonable doubt as to whether it led the jury to a verdict it otherwise might not have reached." *State v. Lazo*, 209 N.J. 9, 26 (N.J. 2012) (internal alterations & citation omitted).

It is clear from the Appellate Division's direct-appeal opinion that it would have reached the same outcome on harmless-error review.[4] That Kevin Phillips did not identify Miller as the shooter was repeatedly emphasized throughout the trial. Further, Judge Vena instructed the jury:

> Regardless of what counsel has said *or I may have said*, recalling the evidence in this case it is your recollection of the evidence that should guide you as judges of the facts. Arguments, statements, remarks, openings and summations of counsel are not evidence and must not be treated as evidence.

(3/30/2005 Tr. 73:20–25) (emphasis added). Bearing in mind the principle that jury charges are not viewed in isolation—*see, e.g.*, *State v. Marshall*, 123 N.J. 1, 226 (N.J. 1991), *superseded on other grounds as stated in State v. Troxell*, No. A-3730-10T2, ___ N.J. Super. ___, 2014 WL 562753, at *5 n.4 (App. Div. Feb. 13, 2014)—and presuming that the jury followed the instructions given it, *see State v. Nelson*, 173 N.J. 417, 447 (N.J. 2002), Miller has not shown how the use of a different standard of review would have affected the Appellate Division's decision.

Although the Appellate Division did not explicitly address the question, Miller's contention about "imbalance" is also without merit. Judge Vena commented at length about how the state bears the burden of proof with regard to identification, and also referenced Miller's

---

[4] In his state-court filings, Miller relied on a line of New Jersey cases cautioning against finding incorrect instructions to be harmless error. *See, e.g.*, *State v. Weeks*, 107 N.J. 396, 410 (N.J. 1987). Those cases pertain to incorrect instructions of law, not fact, and are distinguishable.

defense that he was not the person involved in the shooting.  (*See, e.g.*, 3/30/2005 Tr. 79:22–80:14.)  Wright was vigorously cross examined about her identification of Miller.  Further, Davis's inability to identify the person sitting before him in court arose out of Miller's changed appearance.  (*See, e.g.*, 3/29/2005 Tr. 56:2–8.)  Also, *State v. Robinson*, 165 N.J. 32 (N.J. 2000), which Miller cited repeatedly, makes clear that a trial court is not required to pass upon perceived weaknesses in identification evidence.  *See id.* at 26–27.  Mentioning that Miller was, in some form, positively identified by certain witnesses—without commenting at all about the context of those identifications—did not then require Judge Vena to comment on the infirmities present in those identifications.

To the extent that Miller's ineffectiveness claim pertains only to the effect it had upon his trial (and not on the change in appellate review standards), he fails to show *Strickland* prejudice there, as well.  As discussed above, it is likely that an objection would not have been sustained, because the remarks in question were not error.  But even if defense counsel had obtained a clarification in the jury charge about the identification testimony of various witnesses, Miller presents no reason to believe this would have altered the outcome of his trial.

Accordingly, this claim is without merit.

  B)    *Ground Two: Ineffective Assistance Based on Failure to Request Aggravated/Reckless Manslaughter Instruction*

Miller proposes that there was "more than sufficient evidence in the trial record to require the court to charge the jury on the lesser included offense of aggravated and reckless manslaughter."  (Pet. §12B.)  "[A] jury correctly charged on the manslaughter alternatives," he reasons, "may have concluded that the evidence indicated a reckless spraying of gunfire, evincing not necessarily a knowing or purposeful intent, but a reckless action . . . ." (Pet. §12B.)

Relying in large part on *State v. Jenkins*, 178 N.J. 347 (N.J. 2004), for the principle that "a trial court has an independent obligation to instruct on lesser-included charges when the facts adduced at trial clearly indicate that a jury could convict on the lesser while acquitting on the greater offense," *id.* at 361, Miller raised the underlying substantive claim on direct appeal.  In rejecting it, the Appellate Division wrote:

> In this matter, defendant did not request the lesser-included charge.  Therefore, the record must clearly indicate that a lesser charge was appropriate.  It was not. This was not a case where the victim's death arose from chaotic or reckless shooting into a crowd of people.  Rather, the evidence disclosed that multiple shots were aimed at a single target.  The victim was shot eight times at close range while he was lying on the ground.  If the testimony of the State's witnesses was accepted by the jurors, there is little doubt that the shooter's conduct was knowing and purposeful.  While the jurors could have found defendant was not the shooter, there was no clear indication of a rational basis for the jurors to acquit defendant of the murder charge but still convict him of the proposed lesser offenses of aggravated or reckless manslaughter.

*Miller*, 2007 WL 1428943, at *4.  Miller does not contend with this outcome, which was based on state law and is therefore due great deference.  *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").  And as further indicated by Judge Vena in his PCR opinion, the proposed instruction would in any event be at odds with Miller's trial strategy, which focused on identification, not mental state.  "Defense counsel need not request instructions inconsistent with its trial theory."  *Butcher v. Marquez*, 758 F.2d 373, 377 (9th Cir. 1985); *see also Neal v. Acevedo*, 114 F.3d 803, 806 (8th Cir. 1997) ("We conclude that trial counsel's decision not to request the lesser-included offense instructions was reasonable trial strategy because the instructions would have been inconsistent with Neal's alibi defense.").

Because Miller has not shown that trial counsel performed deficiently by failing to ask for the instruction, and otherwise that the instruction if given might have led to a different outcome, this claim is without merit.

19

C)   *Ground Three: Ineffective Assistance Based on Failure to Object to "Confusing and Contradictory" Aggravated Assault Instructions*

Miller maintains that Judge Vena erred in instructing the jury on the attempted aggravated assault count per Stacy Davis, and that counsel was ineffective for failing to object. Specifically, Miller argues that Judge Vena, while reading from the indictment,[5] told the jury that Miller could be found guilty if he "purposefully, knowingly or recklessly . . . cause[d] or attempt[ed] to cause serious bodily injury to Stacy Davis."  (Pet. § 12C.)  He concedes that Judge Vena "then properly instructed the jury" on the elements, but characterizes the earlier mistake as an uncorrected error.

Again, the underlying substantive claim was raised on direct appeal.  Miller relied on state cases that rejected a "knowing, rather than purposeful" *mens rea* for attempt.  (*See* Dir.App.Br. 20–21.)  He acknowledged that the error derived from Judge Vena's reading of the elements as set forth in the indictment, which was followed by the correct instructions.  (*See, e.g.*, Dir.App.Br. 21.)  The Appellate Division rejected the claim.  Because a jury charge must be evaluated in its entirety, the court held that "[t]he charge, taken as a whole, properly explained the intent necessary to convict defendant on the charge of aggravated assault."  *Miller*, 2007 WL 1428943, at *5.

Miller gives no real reason to challenge this result, nor to expect a different outcome had counsel objected or otherwise preserved the claim.  As the Appellate Division said, it is axiomatic, under both state and federal law, that jury instructions must be viewed in their entirety.  *See United States v. Sussman*, 709 F.3d 155, 181 (3d Cir. 2013); *State v. Wilbely*, 63 N.J. 420, 422 (N.J. 1973).  The alleged error (*see* 3/30/2005 Tr. 93:18–25) was followed by a precise recitation of the correct charges, both for the substantive crime and for attempt (*see*

---

[5] The indictment does indeed contain the "knowingly or recklessly" language.  (*See* Indictment 2 [D.E. 14-3].)

3/30/2005 Tr. 97:11–19).  Plainly, Judge Vena corrected whatever misimpression might have arisen from the wording of the charge in the indictment.  Because Miller fails to set forth how a timely objection would have affected the outcome of either his trial or direct appeal, he is entitled to no relief on this claim.

D)    *Ground Four: Ineffective Assistance for Failing to Move for a Judgment of Acquittal Regarding the Unlawful Possession of a Weapon Charge*

Miller alleges that, at the close of the state's case, "there was simply no evidence presented that stated that [he] did not have a gun permit"; thus, trial counsel should have moved for judgment of acquittal.  He notes that the jury asked, at one point, whether a proper search had been done for a gun permit.  (Pet. § 12D.)

Unlike the previous claims, this was not raised in its substantive form on direct appeal, but was instead raised for the first time on PCR review.  (*See, e.g.*, PCR.Br. 16–17.)  Judge Vena decided that it was barred under N.J. Ct. R. 3:22-4(a) and was otherwise meritless, as trial counsel "did in fact request such relief."

However, the claim was not pursued thereafter.  It is absent from Miller's counseled PCR appellate brief and *pro se* supplement .  (*See* Br. and App'x for Def.-Appellant 8–23, Supplemental Letter Br. [D.E. 17-2].)

Pursuant to 28 U.S.C. § 2254(b)(1), a state prisoner is required to exhaust all available state-court remedies before seeking relief from the federal courts.  To exhaust, a claim must be pursued through one full round of state-court review, from the trial level through the appellate courts that are available for the particular claims.  *See Carpenter v. Vaughn*, 296 F.3d 138, 146 (3d Cir. 2002).  If a claim is unexhausted *and* further exhaustion is no longer possible, the claim is procedurally defaulted, and relief may not be granted on the merits unless the petitioner shows either 1) cause and prejudice sufficient to excuse the default or 2) that failure to consider the

claim will cause a fundamental miscarriage of justice. *Id.* Here, Miller plainly abandoned this claim midway through the PCR process, and a number of New Jersey rules would prevent any attempt to revive it. As a result, the claim is procedurally defaulted, with no grounds to excuse the default apparent.[6]

> E)   *Ground Five: Ineffective Assistance for Due to "Actual Conflict of Interest"*

In the final ground of the petition, Miller says that trial counsel was ineffective because he had previously represented the decent, Timothy Phillips. (Pet. §12E.) Trial counsel's most-recent representation of Phillips took place in 1998, many years earlier.

In rejecting the claim on PCR appeal,[7] the Appellate Division noted that Miller was fully aware of the conflict. During a pretrial hearing, Judge Vena addressed the issue with Miller and his lawyer. He inquired about the scope of the prior representation and was told that it was limited to "two or three drug cases." (3/23/2005 Tr. 4:5–18.) Trial counsel said that he had disclosed the prior representation to Miller in 2004, when he had first met with him to discuss the murder charges. (3/23/2005 Tr. 5:23–25.) Then Judge Vena had Miller sworn, and he confirmed counsel's recollection. Based on the hearing, Judge Vena decided that Miller had knowingly and intelligently waived any conflict. (3/23/2005 Tr. 7:4–6, 9:16–12:15.) The Appellate Division found no ineffectiveness under *Strickland*, and characterized as "bald assertions" a claim that a truly competent attorney would have presented evidence of the decedent's bad character. *Miller*, 2009 N.J. Super. Unpub. LEXIS 2751, at *7–11.

This outcome is neither contrary to nor an unreasonable application of governing Supreme Court law. Here, all the players were aware of the prior representation. There was no

---

[6] The state's invocation of procedural default is indirect at best, as discussed in section III.B, *infra*. Nevertheless, procedural default may be raised *sua sponte*. *See Sweger v. Chesney*, 294 F.3d 506, 520–21 (3d Cir. 2002).

[7] Because the Appellate Division dealt with this claim on the merits—despite its facial presentation as requesting remand due to ineffectiveness of PCR counsel—the Court will assume without deciding that it was properly presented and exhausted. *See* 28 U.S.C. § 2254(b)(2).

evidence of actual conflict and Miller waived the issue of conflict under oath and after

questioning by the trial judge.  Is well established that a defendant may waive possible conflicts

of interest.  *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 151–52 (2006); *Holloway v.

Arkansas*, 435 U.S. 475, 483 n.5 (1978); *Morris v. Beard*, 633 F.3d 185, 197 (3d Cir. 2011).

Absent evidence of an actual conflict of interest or a defective waiver, this claim is plainly

without merit.

## V. Conclusion

The Court has examined the claims raised in Miller's petition, and has found them to be

either without merit or (as to one claim) procedurally barred.  The Court will therefore deny

Miller's 28 U.S.C. § 2254 petition by appropriate order.  Because jurists of reason would not

debate the outcome reached today, no certificate of appealability will be granted.  *See* 28 U.S.C.

§ 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).


March 12, 2014

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.